James P. MOZINGO, III, Appellant,

v.

YORK COUNTY NATURAL GAS AUTHORITY, Appellee.

No. 9913.

United States Court of Appeals
Fourth Circuit.

Argued June 30, 1965.

Decided Oct. 6, 1965.

D. Kenneth Baker, Darlington, S. C., for appellant.

James P. Mozingo, III, Darlington, S. C., pro se.

Huger Sinkler, Charleston, S. C., and C. W. F. Spencer, Jr., Rock Hill, S. C., for appellee.

Before BRYAN and BELL, Circuit Judges, and THOMSEN, District Judge.

PER CURIAM:

Composition of its indebtedness pursuant to the Bankruptcy Act, Chapter 9,

Title 11, United States Code, was granted York County Natural Gas Authority by the District Court over the objection of James P. Mozingo, III. Appealing, he assigns error to the confirmation, with uncontested exceptions, of the plan submitted by York. See 11 U.S.C. § 403. With a slight modification, we affirm the order.

The Authority is a body politic created under the laws of South Carolina and, concededly, is an agency or instrumentality qualified as a petitioner for the benefits of the statute. 11 U.S.C. §§ 401(6), 402; Section 1–71, Code of Laws of South Carolina, 1962. Commencing in 1957 it issued revenue bonds to finance the extension of transmission and distribution lines to bring natural gas to residents in and about York County, S. C. When it invoked the Act, the Authority had bonds outstanding in the principal sum of $3,778,000, with interest of $736,968 accrued and unpaid.

The petition adequately pleaded an inability to meet these obligations. Generally, the plan it submitted provided for the exchange of interest-bearing, refunding bonds (Series A) in amounts corresponding to the outstanding issues. The new bonds would be accompanied by subordinated, non-interest certificates of indebtedness equal to the unpaid interest. Certificates would also be issued for reimbursement of the bankers who had advanced the moneys for the last interest paid, March 1, 1961. Bonds (Series B) in the sum of $522,000 were also to be issued under the plan to raise funds with which to defray the expenses incident to the refunding and to meet the cost of improvements. Series B were to be bought by the investment bankers who were supervising the refinancing. A part of the proceeds would be used by the bankers to purchase outstanding bonds from persons unable or unwilling to exchange them for the new ones.

Additional ("parity") bonds would be authorized for issuance in the future to provide moneys to restore any damage to the system suffered through catastrophe or to acquire new property and meet the cost of general repairs, extensions, enlargements or improvements to the system.

Another type of bond authorized was known as a prior lien bond. Such bonds could be issued if and when the Authority might deem it advisable to acquire or construct direct lines to new or different sources of supply.

Upon examination of the petition and supporting papers, the District Court ascertained that the required number of creditors had duly accepted the plan. Whereupon the petition was approved as properly filed. 11 U.S.C. § 403(a). A hearing was then ordered upon the petition, to be preceded by requisite notice to creditors. 11 U.S.C. § 403(b). After this hearing, on consideration of the evidence adduced by the petitioner to justify approval of the plan and by the appellant Mozingo in protest, the District Judge made written findings of fact with his conclusions of law thereon and confirmed the plan. He determined that the plan was "fair, equitable, and for the best interests of the creditors" and otherwise met the requirements of the statute. 11 U.S.C. § 403(e).

We cannot agree with the appellant that the findings of the District Judge are not well grounded in the evidence or that his conclusions are contrary to law. There was adequate proof of the acceptance and approval of both the petition and the plan by the necessary creditors. He scrutinized the consents for any disqualifying interest, whenever questioned, of those counted as favoring the plan. In the circumstances he was justified, too, in refusing to allow the withdrawal of certain of the consents to the plan which had been filed with the petition. No change had thereafter been made in the plan to the prejudice of these consenters, and the Court had previously acted upon their concurrence in accepting the petition. Cf. 11 U.S.C. § 403(e); Mason v. El Dorado Irr. Dist., 144 F.2d 189, 190 (9 Cir. 1944), cert. den. 323 U.S. 758, 65 S.Ct. 91, 89 L.Ed. 607,

rehearing denied 323 U.S. 816, 65 S.Ct. 187, 89 L.Ed. 649.

■ Special objection was lodged by the protestant to the provision in the plan allowing issuance of the prior lien bonds already described, because these bonds would have primacy over the new refunding bonds. Their authorization was one of the proposals included in the plan as it was submitted to the creditors in a memorandum prior to their approval of the plan. The principal reason for the provision for these bonds was to safeguard the Authority from the risk of entire and absolute dependence upon a single supplier of gas. Protection of the earlier bondholders against abuse by the Authority of this power is found in the requirement of the plan that the bonds could be issued only after actual notice to the registrar of the outstanding bonds, and general notice by publication to their holders, of the intention to float prior lien bonds. This stipulation implies the right of the bondholders to be heard and to show cause why such bonds should not be issued. We are unpersuaded that the District Judge erred in not rejecting the plan because of its provisions for prior lien bonds.

A further objection was directed to the allowance of a fee to the investment bankers who had agreed to undertake the execution of the plan. The compensation consisted of a percentage of the face of such bonds as the bankers procured for exchange. The special point made was that the commission was allowable on bonds owned by the bankers in their own right and surrendered for exchange. The Court carefully weighed this factor and became satisfied of the fairness of the arrangement. It is significant that in approving the plan the Court appreciably reduced the compensation as originally proposed in the plan. This decision could have included a consideration of the argument pressed by the objector.

■ Our only difference with the District Judge is upon the time allowed those bondholders who at the date of the entry of the order were unable or unwilling to accept the plan, or were unknown, to present their bonds for exchange. In default of such timely tender, the bonds would be declared as no longer obligations of the Authority. 11 U.S.C. § 403(f). The limitation was put at two years from the effective day of the final decree or until March 1, 1967 (an interest period), whichever was the later date. We think that without detriment to the execution of the plan the permissible time for presentation of the old bonds should be extended until March 1, 1972. To comply the Authority has only to escrow a corresponding number of new bonds and certificates with the designated fiscal agent, for delivery as and when the old bonds are tendered for exchange.

With this modification, the order on appeal will be affirmed.

Affirmed with modification.