Ex parte **CHESTER COUNTY NATURAL GAS AUTHORITY, Petitioner.**

In re **OUTSTANDING BONDS, SERIES OF 1957, 1958 AND 1959, Payable Solely From Revenues.**

**No. B #66-42.**

United States District Court
D. South Carolina,
Rock Hill Division.

June 23, 1966.

---

C. W. F. Spencer, Jr., Rock Hill, S. C., and Huger Sinkler, Charleston, S. C., for petitioner.

James P. Mozingo, Darlington, S. C., pro se.

D. Kenneth Baker, Darlington, S. C., for respondents.

## INTERLOCUTORY ORDER GRANTING APPROVAL OF PLAN OF COMPOSITION

HEMPHILL, District Judge.

Petitioner asks approval of a Plan of Composition, as authorized and defined in Title 11, Chapter 9, United States Code. The Petition for Approval of Plan of Composition bears date April 1, 1966.[1] At that time the Fiscal Agent[2] of the Authority then held consents in writing approving the Plan by or on behalf of some 70%[3] of the affected creditors, though only 51% approval was required at that time under the applicable provisions of law. No requests for withdrawal of consent were made and no authority therefor was given by the court. Some of the consents have been subjected to question but none have been disallowed; if allowed they are not sufficient to affect this proceeding. Physical delivery of the bonds for exchange represents strong and persuasive evidence of the authority of the agent. The Fiscal Agent holds bonds supporting all consents, whether signed by or on behalf of the owner. 66⅔% in valid consents is required by law to sustain final approval in proper cases.

As required by the Order of this Court dated April 2, 1966, due notice of hearing was given by mailing of notice on April 4, 1966 to all known bondholders listed or referred to in the Petition of April 1, 1966, and by publication of notice once a week for three weeks in The State, at Columbia, S. C., and The Daily Bond Buyer, at New York, N. Y., commencing April 8, 1966. Affidavits on file in the record and testimony offered at the hearing held June 18, 1966 pursuant to such notice, demonstrate proper and adequate compliance with the requirements of law as to the giving of notice. No affected creditor has filed Answer opposing approval of the plan. Nevertheless, James P. Mozingo, III, of Darlington, S. C., the holder of 35 Bonds, appeared on his own behalf at the hearing and cross examined witnesses. At the time of his appearance he stated on inquiry from the court that he raised no question as to any steps taken in the proceeding up to the time of the hearing. He raised no question as to service upon him or jurisdiction of the court. The rights of Petitioner and of a large majority of its Bondholders could be seriously prejudiced by any failure of this court to handle this matter with proper dispatch, subject of course to allowing this Bondholder his day in court, which has been duly and properly given him. Despite his failure to answer, he has been in effect accorded the privilege of a Respondent for the purposes of the hearing.[4]

---

1. Petition for Approval of Plan of Composition and Order permitting filing are incorporated herein and made a part hereof as Appendices I and II hereof.

2. Citizens and Southern National Bank, Columbia, South Carolina.

3. At the hearing in Rock Hill, S. C., on June 18, 1966, the representative of the Fiscal Agent testified that 74% had returned consents to the Fiscal Agent. No dispute of the fact that Petitioner was in compliance was made before the court.

4. This court reviewed in light of the experience had in Ex parte York County Natural Gas Authority, 238 F.Supp. 964 (W.D.S.C.1965), and appellate direction on review (entitled Mozingo v. York County Natural Gas Authority) in 352 F.2d 78 (4 Cir., 1965).

Under the proposed Plan of Composition, various and specific requirements imposed by applicable federal statutes must be followed. First, it must be noted that a Plan of Composition may be filed only by a "Petitioner", defined in Section 402 of Title 11, U.S.C., as "any agency or instrumentality referred to in section 401 of this title." Mozingo does not meet the requirements in this regard. He may object to or seek to modify the Plan of Composition submitted by the Petitioning Authority, but any modification allowed by the court must have the acceptance in writing of the Petitioner. Section 403(e), Title 11, U.S.C. His suggestion that the court place the Authority in a debt moratorium status without ordering refunding fails to take into account the Authority's need for and ability to obtain $420,000 in new funds at a rate of interest very favorable in the light of market conditions at the present time.[5] The large number of approvals already given to the Plan of the Petitioning Authority affords no reasonable possibility of required approval of any alternate suggested by Mozingo. Therefore, no alternate plan or modification is properly before the court for consideration at this time and Mozingo's alternate suggestion of a debt moratorium is not properly allowable and must be denied. There was absence of even remote proof of the practicality, or fiscal soundness, of a moratorium.

Does the Plan of Composition submitted by Petitioner warrant approval by this court? The Plan of Composition so submitted is examined to determine whether such approval may and should be granted.

First, however, we must consider the right of a Petitioner such as Chester County Natural Gas Authority, a body politic initially created by South Carolina Act #802, Acts of S. C. for 1954 to institute a proceeding such as this. The powers of the court to act in such a matter were carefully and fully reviewed by this court, with full citation of authorities, in a companion proceeding Ex parte York County Natural Gas Authority, D.C., 238 F.Supp. 964 affecting an adjoining county, brought by York County Natural Gas Authority before this court as #B/2075, on August 25, 1964. The findings of this court in that proceeding were affirmed with minor modification by the Fourth Circuit Court of Appeals on October 6, 1965, Mozingo v. York County Natural Gas Authority, 352 F.2d 78. Certiorari was denied by the United States Supreme Court on April 4, 1966 (See 86 S.Ct. 1277) and thereupon the approved Plan of Composition involved in that proceeding was implemented and carried out. In view of the great similarity between that proceeding and this, reference is here made to the numerous authorities and decisions noted, discussed and relied upon in that proceeding, which will be relied upon without further specific discussion or direct citation in this Decree, except in certain cases where this appears desirable as an aid to proper clarity.

The facts before this court reveal the outstanding indebtedness which Petitioner is unable to pay and concerning which it has been in default is as follows:

(a) $925,000 of Natural Gas System Revenue Bonds, dated September 1, 1957, bearing interest at six separate rates, and varying from 5% to 5.80%, which has not been paid since the interest payment date of September 1, 1960, and is due from such date at the respective rates borne by such bonds.

(b) $188,000 of Natural Gas System Revenue Bonds, dated September 1, 1958, bearing interest at six separate rates, and varying from 5% to 5.80%, which has not been paid since the interest payment date of September 1, 1960, and is due from such date

---

5. As Justice Cardozo opined in Barkin Const. Co. v. Goodman, 221 N.Y. 156, 161, 116 N.E. 770, courts are not to shut their eyes to the realities of business life.

at the respective rates borne by such bonds.

(c) $158,000 of Natural Gas System Revenue Bonds, dated July 1, 1959, bearing interest at six separate rates, and varying from 5% to 5.80%, which has not been paid since the interest payment date of September 1, 1960, and is due from such date at the respective rates borne by such bonds.

Default in payment of these obligations commenced on September 1, 1960, but Petitioner has operated the system and continued expansion and development in an effort to improve its revenue position, but it does not have the funds, in being or in prospect, to meet its obligations and/or to develop its alleged and hoped for potential or to make necessary improvements as and when required. It obtains its supply of natural gas from Carolina Pipeline Company in like manner as in case of York County Natural Gas Authority. No right is reserved by this Authority under its Refunding Bond Resolution, as was done in the case of York County Natural Gas Authority to issue Prior Lien Bonds to protect availability of a source of gas supply.

The testimony indicated this can be accomplished by other means. By South Carolina Act #1188, approved by the Governor on May 25, 1964, as amended by 1966 Act R812 approved February 25, 1966, the Authority was granted statutory authority to refund its outstanding bonds, to fund its other indebtedness and to raise moneys for debt service reserve and for improvements, which clearly represents sanction of the State for this proceeding, if not otherwise given. On February 28, 1966, the Authority adopted a Refunding Bond Resolution providing for issuance of $1,691,000 of Refunding and Improvement Revenue Bonds, of which $1,271,000 were described as Series A Bonds and earmarked for exchange with Outstanding Bonds in like amount. Series B Bonds were to be sold in the amount of $420,000 to cover the costs of improvements, provide a debt service reserve and working capital, and pay the costs of refunding and certain deferred expenses. The Bonds mature in 33 years from their March 1, 1966 issue date and bear interest at 4% for 10 years and 4½% thereafter for the A Bonds and 5¼% for the B Bonds. Certificates of Indebtedness are to be issued for unpaid back interest, same to be payable out of a percentage of future surplus revenues. Details of the Plan are fully established in the record through Exhibits offered by Petitioner, consisting of the Bond Resolution and Supplement, the Refinancing Agreement, the Refinancing Plan, the Memorandum and the Amortization Table, none of which aroused objection.

The applicable statute requires advance assent under normal circumstances of the holders of at least 51% in amount of all Outstanding Bonds as a prerequisite to the filing of a Plan of Composition by a qualified Petitioner; more than one plan may not be properly before the court for consideration at one and the same time, though any such plan is subject to modification in a proper manner, with Petitioner's assent. The filing of valid consents to Petitioner's Plan of Composition by the holders of some 74% in amount of the Outstanding Bonds, and ample evidence at the hearing herein, adequately sustaining the allegations of the Petition for Approval, clearly demonstrate and show, and this court hereby finds as a fact, that the Plan of Composition is fair and reasonable and feasible, and merits approval. This court finds as a fact that the required number of valid consents are available to sustain approval of the Plan and approves the Plan, except as otherwise provided in this Order.

Paragraph 6 of the Petition reads as follows:

6. That sums provided for refunding, improvement and other costs, expenses and allowances, which are hereby averred to be reasonable and necessary and which are payable solely

by Petitioner without payment of any cost by any creditor or other person or agency, have been heretofore fixed and agreed upon, as follows:

| | |
|---|---:|
| Extensions and Improvements (3 years) | $160,000 |
| Debt Service Reserve | 75,000 |
| Working Capital | 25,000 |
| Deferred Capital Expenses | 30,000 |
| Deferred Operating Expenses | 63,000 |
| Total, excepting refunding costs | $353,000 |

| | | |
|---|---:|---:|
| Refunding Costs: | | |
| Fee to Investment Bankers (per prior contract) | | |
| 2½% on $1,271,000 Refunding Bonds | $31,775 | |
| 2½% on $420,000 Improvement Bonds | 10,500 | |
| Legal Expenses, Incl. Bond Counsel | 12,500 | |
| Exchange Agent | 5,000 | |
| Printing Bonds | 1,000 | |
| Proceeding for Composition (est.) | 5,000 | |
| Administrative and Miscellaneous | 1,225 | 67,000 |
| Total Refunding and Improvement Costs | | $420,000 |

The court finds that the portion of the foregoing tabulation under the heading Refunding Costs needs adjustment and in lieu thereof hereby approves the following:[6]

| | |
|---|---:|
| Refunding Costs: | |
| Fee to Investment Bankers | |
| 1½% on $1,271,000 Refunding Bonds | $19,065.00 |
| 1½% on $420,000 Improvement Bonds | 6,300.00 |
| Legal costs and expenses, including Bond Counsel | 8,750.00 |
| Exchange Agent | 2,625.00 |
| Printing New Bonds | 1,000.00 |
| Proceeding for Composition (est.) | 5,000.00 |
| Administrative and Miscellaneous Costs | 975.00 |
| Total Approved Costs | $43,715.00 |

The allowance against unspecified costs of this proceeding, included by Petitioner, was not disturbed or changed but this court has not yet approved any specific items of cost payable from this allowance. Counsel for Petitioner have, to the knowledge of the court, performed other services, and the adjustment hereinabove does not include proper fees therefor, which this court will pass on at a later date. Payment of such amount as may, upon proper showing, be hereafter approved for additional costs and expenses shall be made out of funds de-

6. The court takes into account the fact that 26% of original Bondholders have not consented to the Plan of Composition, and considers other factors thereabout.

rived from the established allowance and/or from the reduction in costs and charges ordered herein and remaining funds derived from these sources shall be used to provide additions, improvements and extensions to the System of the Authority, pursuant to Section 11.06, Article XI of the Refunding Bond Resolution.

This court further finds that the final cut-off date for depositing of Outstanding Bonds for Refunding exchange should be extended to March 1, 1974,[7] which can be done without interfering with proper operation of the Plan. Petitioner has assented to this change in the Plan and it is hereby authorized and required.

In accordance with the original purpose, intent and requirements of the approved Plan of Composition and despite any intervening delay in its consummation, Petitioner shall in implementing and carrying out the approved Plan (a) provide for payment of interest cost on the $1,691,000 of Refunding and Improvement Revenue Bonds now being delivered from their issue date of March 1, 1966 to their delivery date, charging same against earnings received from operations subsequent to the issue date and collecting accrued interest on the B Bonds to their delivery date, and (b) provide for payment of system extension and improvement costs from such issue date to such delivery date, charging same against Renewal and Extension Fund moneys made available therefor under the provisions of the Refunding and Improvement Bond Resolution.

▆ This court hereby finds as a fact and determines as to the Plan of Composition that:

(a) The Plan of Composition is fair, equitable and for the best interests of the creditors; it does not discriminate unfairly in favor of any creditor or class of creditors.

(b) The Plan complies with the provisions of Chapter 9, of Title 11, U.S.C.

(c) The Plan has been accepted and approved as required [8] by the holders of more than ⅔ in amount of the Outstanding Bonds.

(d) This court has carefully examined and finds the amounts to be paid by Petitioner for services or expenses incident to the composition have been fully disclosed and are reasonable, as modified and reduced by this court.

(e) The Plan has been offered and accepted in good faith.

(f) It is within the authority granted to Petitioner by law to take all action necessary to be taken by it to carry out the Plan.

(g) The provisions for delivery to affected creditors of Petitioner of securities in the form of Revenue Bonds and Certificates of Indebtedness, are valid and lawfully authorized, and they will constitute valid obligations of Petitioner in accordance with their respective terms.

This court has carefully considered the whole spectrum of the composition petitioned, and while it is not constrained to characterize the original, or this, effort as speculative, nevertheless, every venture, every issue has its attraction. As was observed by the late Justice McReynolds in State of Missouri ex rel. S. W. Bell T. Co. v. Public Service Commission: [9]

"In speculative enterprises the capital cost of money is always high—partly because the risks involved must be covered; partly because speculative enterprises appeal only to the relatively small number of investors who are unwilling to accept a low return on their capital. It is to the interest both of the utility and of the community that the capital be obtained at as low a cost as possible. * * * He who buys bonds seeks primarily safe-

---

7. This effectively follows the direction of the Appellate Court in 352 F.2d 78, supra.

8. 11 U.S.C. § 403(d).

9. 262 U.S. 276, 307, 43 S.Ct. 544, 553, 67 L. Ed. 981 (1923).

ty. If he can obtain it, he is content with a low rate of interest."

Here we find a most attractive interest rate in the initial offering. The court finds, in the light of the credible evidence before it, that a safety factor does exist in the plan proposed—a reasonable expectation of revenue, regular payment of obligation, and potential solvency as to principal obligations.

Bondholder Mozingo has been heard, his objection and opposition carefully weighed. The court finds his objection, in proof and in reason, insufficient and inadequate to warrant disapproval or modification of the proposed Plan of Composition, excepting only such modifications as appear in the order hereinabove.

Upon careful consideration of the entire record, this court finds:

1. The Order Approving Filing of Petition for Composition, dated April 2, 1966, is herewith ratified and confirmed in all respects.

2. This court finds as a fact that all requirements of law for approval of the Plan of Composition submitted in this proceeding, particularly as noted in paragraphs (a) through (g) hereof, have been met and discharged.

3. The Plan of Composition is hereby approved as of this date, subject to the taking of proper action by Petitioner as hereinafter required.

Petitioner is authorized and directed to forthwith proceed with implementation and carrying out of the Plan of Composition approved by this Order through immediate adoption of the Supplemental Resolution and immediate deposit with the Fiscal Agent for delivery pursuant to and subject to the requirements of the Resolution and Supplemental Resolution of the Bonds of Series A and B and any interest now due thereon, together with the necessary Certificates of Indebtedness; whereupon the Fiscal Agent shall forthwith proceed with implementation of the plan of exchange and delivery defined in the Resolutions, all of which shall be accomplished within not exceeding 15 days after this Order shall become finally binding and effective.

Upon implementation of the Plan of Composition approved hereby through deposit by Petitioner with Citizens and Southern National Bank of South Carolina, at Columbia, S. C., as Fiscal Agent and as Exchange Agent, of all required Refunding and Improvement Bonds of Series A and B, all interest due thereon and all Certificates of Indebtedness necessary to provide for delivery of all Bonds of Series B and exchange of all Bonds of Series A in accordance with the Plan of Composition for all Outstanding Bonds and Coupons, whether deposited or not, and upon implementation of the plan of delivery and exchange, except as to bonds not yet deposited, then and thereupon the Outstanding Bonds shall be fully extinguished and shall no longer constitute an indebtedness due by Petitioner or any impediment to full validity of the Refunding and Improvement Bonds now being issued; provided that any still undeposited Outstanding Bonds and Coupons shall nevertheless be and continue acceptable for purposes of refunding exchange only, during the additional time allowed therefor under the provisions of this Order.

Bondholders who have not yet deposited their Outstanding Bonds and Coupons for refunding exchange shall be allowed until the March 1, 1974 regular interest payment date, within which to deposit such Outstanding Bonds and Coupons with the Citizens and Southern National Bank of South Carolina, at Columbia, S. C., as Fiscal Agent and as Exchange Agent for refunding exchange pursuant to the approved Plan of Composition, provided that after such date all liability of Petitioner under any undeposited Outstanding Bonds and/or Coupons and under any undelivered Refunding Bonds and/or Certificates of Indebtedness deposited with the Fiscal Agent for purposes of refunding exchange shall stand fully extinguished because of the non-deposit of such Outstanding Bonds and Coupons within the

time allowed by this court; and any such extinguished Refunding Bonds and/or Certificates of Indebtedness held by the Fiscal Agent shall be voided and delivered to Petitioner, all consistently with provisions to this effect contained in the Notice of Hearing pursuant to the initial order herein, as modified and amplified by this order.

The payments outlined hereinabove are approved, subject to modification or change on proper showing.

This Court shall retain continuing jurisdiction of this proceeding and of all persons subject to the jurisdiction of the court herein pending and until all Outstanding Bonds have been exchanged or all rights under any Outstanding Bonds have been fully and finally extinguished for all purposes, including validity solely for exchange for Refunding Bonds and Certificates of Indebtedness. Any person having proper interest may Petition this court at any time on reasonable notice for any necessary and proper relief incident to implementation and carrying out of the Plan of Composition approved hereby; provided, however, that this provision of this order shall not be construed to include the resurrection and restoration of any rights already finally extinguished by the provisions of this order.[10]

A final decree shall be issued herein following implementation of the Plan of Composition approved hereby.

And it is so ordered.

## Appendix I

### PETITION FOR APPROVAL OF PLAN OF COMPOSITION

TO THE HONORABLE COURT AFORESAID:

Now comes the Petitioner, Chester County Natural Gas Authority, by and through its undersigned counsel, and respectfully shows:

1. That Petitioner is a body politic charged with providing natural gas service to the general public of Chester County, South Carolina, having been created by Legislative Act No. 802 of the Acts of South Carolina for 1954; and that Petitioner is an agency or instrumentality of the type and character defined and described in Title 11, Section 401, United States Code.

2. That pursuant to due legal authority Petitioner has now outstanding Revenue Bonds and interest thereon payable solely from the revenues of its natural gas system, heretofore issued to finance construction, completion and extension of said system, as follows:

(a) $925,000 of Natural Gas System Revenue Bonds, dated September 1, 1957, bearing interest at six separate rates, and varying from 5% to 5.80%, which has not been paid since the interest payment date of September 1, 1960, and is due from such date at the respective rates borne by such bonds.

(b) $188,000 of Natural Gas System Revenue Bonds, dated September 1, 1958, bearing interest at six separate rates, and varying from 5% to 5.80% which has not been paid since the interest payment date of September 1, 1960, and is due from such date at the respective rates borne by such bonds.

(c) $158,000 of Natural Gas System Revenue Bonds, dated July 1, 1959, bearing interest at six separate rates, and varying from 5% to 5.80%, which has not been paid since the interest payment date of September 1, 1960, and is due from such date at the respective rates borne by such bonds.

3. That Petitioner encountered a number of unforeseen difficulties in creating and establishing its gas system, including particularly (a) unavoidable delay in financing with resultant loss of one year's anticipated heating season revenues, (b) unanticipated additional construction costs, and (c) exhaustion of maximum allowable capitalized interest funds before generation of sufficient earnings to meet interest costs out of current revenues available after payment of operating costs; and that as a

10. This paragraph is identical to that found in the York County Case, 238 F.Supp. 964, 983.

result thereof Petitioner is in default under the terms of its Bond Resolution and Supplements, and is subject to declaration by the requisite number of bondholders that all of its Outstanding Bonds are forthwith due and payable pursuant to the requirements of said Resolution and Supplements.

4. That the revenues pledged for payment of the Outstanding Bonds described above are inadequate to pay said Bonds and the interest thereon as the same mature, after first providing for necessary operating costs; that because of its default Petitioner is unable to obtain necessary funds with which to meet an ever increasing present demand for gas service, particularly in newly established outlying residential developments seeking gas service for central heating, hot water heating and cooking requirements; that a long period of restricted growth and continued default, with serious limitation upon its ability to properly serve the public and to meet its obligations to its bondholders, will ensue unless Petitioner obtains approval for composition with its creditors as hereinafter outlined and sought; and that incident thereto Petitioner will require new bond funds for costs of the refunding program, system extensions and improvements, payment of certain deferred capital and operational costs and establishment of necessary working capital and reserves for protection of debt service.

5. That according to realistic revenue projections based upon past actual operating experience, with allowance for reasonable future growth as estimated therefrom, your Petitioner has now developed sufficient revenue producing potential (a) to meet current interest cost at a realistic current interest rate on the Refunding and Improvement Bonds proposed to be issued to cover the costs and expenses of the refunding and improvement program; (b) to retire the refunding and improvement bonds within a 33 year period; and (c) to provide for eventual payment of all interest now outstanding and unpaid, without interest thereon, within approximately the same retirement period.

6. That sums provided for refunding, improvement and other costs, expenses and allowances, which are hereby averred to be reasonable and necessary and which are payable solely by Petitioner without payment of any cost by any creditor or other person or agency, have been heretofore fixed and agreed upon, as follows:

| | | |
|---|---:|---:|
| Extensions and Improvements (3 years) | | $160,000 |
| Debt Service Reserve | | 75,000 |
| Working Capital | | 25,000 |
| Deferred Capital Expenses | | 30,000 |
| Deferred Operating Expenses | | 63,000 |
| Total, excepting refunding costs | | $353,000 |
| Refunding Costs: | | |
| Fee to Investment Bankers (per prior contract) | | |
| 2½% on $1,271,000 Refunding Bonds | $31,775 | |
| 2½% on $420,000 Improvement Bonds | 10,500 | |
| Legal Expenses, Incl. Bond Counsel | 12,500 | |
| Exchange Agent | 5,000 | |
| Printing Bonds | 1,000 | |
| Proceeding for Composition (est.) | 5,000 | |
| Administrative and Miscellaneous | 1,225 | 67,000 |
| Total Refunding and Improvement Costs | | $420,000 |

7. That detailed plans for issuance of Refunding and Improvement Bonds as herein contemplated, which fully reflect the terms and conditions of the Plan of Composition presented and filed by way of this Petition, are fully set forth in a Bond Resolution duly adopted by Petitioner on February 28, 1966, the full content of which is hereby incorporated herein by reference, it being particularly noted in this connection that due authorization for the refunding of its Outstanding Bonds has been granted to Petitioner by Legislative Act #1188 of the South Carolina General Assembly of 1964, as amended, as reported in the Bond Resolution aforesaid; that a copy of said Bond Resolution, duly certified by the Secretary of Petitioner under its official seal, is being filed along with this Petition as Exhibit "A" thereto; that provision is made for adoption of a Supplemental Resolution fixing the effective date of the Resolution; that there shall be issued within the combined total of $1,691,000 of Bonds the sum of $1,271,000 in Series A Bonds and the sum of $420,000 in Series B Bonds, if such amounts be approved by this Court; and that the exact title of the Refunding Bond Resolution, as prepared by Sinkler, Gibbs & Simons, Bond Counsel, and adopted by Petitioner, is as follows:

"A Resolution Providing for the Issuance and Sale of One Million Six Hundred Ninety-One Thousand ($1,-691,000) Dollars Chester County Natural Gas Authority Refunding and Improvement Revenue Bonds, Dated March 1st, 1966."

8. That by their voluntary action approximately 70% in amount of the holders of Outstanding Bonds issued by your Petitioner have deposited their Bonds with Citizens and Southern National Bank of South Carolina, at Columbia, S. C., as Fiscal Agent and as Exchange Agent for Petitioner, and have consented in writing upon a form entitled Letter of Transmittal, responsive to a form describing the Plan of Composition entitled Memorandum, to proceeding with said Plan of Composition and with refunding of the Outstanding Bonds as proposed in the refunding Bond Resolution identified above; that the form and general content of the Letter of Transmittal and of the Memorandum, copies of which are filed with this Petition as Exhibits "B" and "C" thereto, respectively, are incorporated herein and made a part hereof by reference; and that a list of all bondholders who have filed such consents with the Fiscal Agent, duly certified by the Fiscal Agent and showing the names, addresses and securities deposited by each, copy of which is filed with this Petition as Exhibit "D" thereto, is incorporated herein and made a part hereof by reference.

9. That except in cases where same may have been duly registered in the name of a specific owner, all Outstanding Bonds of Petitioner are payable to bearer; that due to widely held ownership of bearer bonds, it has been impossible for Petitioner to establish and determine ownership of Outstanding Bonds not yet deposited with the Fiscal Agent, except in a limited number of situations, and even in such cases the ownership of any bearer bonds can change at any time without knowledge of Petitioner or its Fiscal Agent; that in consequence of the matters and things aforesaid, Petitioner hereby avers, on information and belief, that all Outstanding Bonds not yet deposited with its Fiscal Agent for refunding exchange, whether registered or payable to bearer, as to which any knowledge concerning ownership is available to Petitioner after due diligence, are now held by the persons or agencies having the addresses and believed to hold such amounts of Outstanding Bonds or Coupons as respectively appear on an authenticated list thereof prepared by the Fiscal Agent from best obtainable information, copy of which is filed with this Petition as Exhibit "E" thereto, which list is hereby incorporated herein and made a part hereof by reference.

10. That Petitioner hereby seeks approval by this Court of the Plan of Composition fully described in this Petition

pursuant to and in accordance with the provisions of Title 11, Section 401 et seq., United States Code, and in this connection Petitioner hereby avers that the approvals already in hand by in excess of two-thirds in amount of all Outstanding Bonds, are more than adequate to fulfill the requirements of law for such approval, subject to giving of proper notice and holding of the requisite hearing.

11. That approximately 30% in amount of the Outstanding Bonds of $1,000 denomination each remain undeposited; that the Resolution and Supplements under which the Outstanding Bonds were issued contain a covenant and limitation in Section 8.05 of the Resolution against the issuance of any further Bonds, except under an earnings formula which cannot be met, in language substantially as follows:

"No Bonds or other obligations of the Authority of any sort payable from the revenues of the System shall be issued except those provided for by the provisions of this Article, and herein denoted as Additional Bonds."

12. That the only assured means of discharging the undeposited Outstanding Bonds without intervention of this Court would be by depositing the full amount of principal and interest due thereon with the Fiscal Agent; but that to follow this course would subject Petitioner to substantial additional costs which would destroy feasibility of the Plan of Composition, and would in addition impose an inequitable penalty on the bondholders who have deposited their bonds for exchange, by providing for cash payment of full principal and all accrued interest on the undeposited Outstanding Bonds; that on information and belief, a large majority of the still undeposited bonds are not being withheld from deposit because of objection to the Plan of Composition, but on account of lack of attention or lack of information on the part of the unknown holders thereof; and that under all existing circumstances the most equitable arrangement possible is for the Court to approve the Plan of Composition and provide for its implementation as hereinafter prayed.

13. That approval of the Plan of Composition will effect substantial savings in interest cost to Petitioner over a period in excess of 20 years; that upon such approval it would be right and proper that all costs of this action be taxed against and paid by Petitioner herein, including the $100.00 filing fee paid herewith and including a reasonable fee as fixed by the Court for legal services rendered by counsel for Petitioner in the handling of this proceeding, which shall be in addition to compensation for other services in connection with the Composition.

14. That all holders of Outstanding Bonds or Coupons are of the same class, protected by pledge of the same revenues; that except for the Outstanding Bonds herein mentioned and for certain deferred capital and operational costs for payment of which provision is made herein, all or substantially all other obligations of Petitioner are current and not in default; and that no action is now pending in any Court for legal enforcement against Petitioner of any unpaid indebtedness.

Wherefore, Petitioner respectfully prays for an Order of this Court finding, providing and/or directing, as follows:

(a) That the foregoing Petition be approved as properly filed pursuant to the requirements of law and in good faith.

(b) That it appears prima facie, and subject to final hearing, that substantially more than the required two-thirds in amount of outstanding creditors have approved the Plan of Composition in writing, that the Plan is fair and equitable and should be approved and that any failure to approve same could create serious inequity between creditors of the same class.

(c) That a hearing on the Petition be fixed at a time and place convenient to the Court and within the time limits provided by law.

(d) That authority be granted for the giving of notice of hearing by publication thereof once a week for three consecutive weeks in The State, of Columbia, S. C., and The Daily Bond Buyer of New York, N. Y., and by mailing a copy thereof with postage prepaid to all known bondholders.

(e) That all obligations due by Petitioner under its Outstanding Bonds be temporarily postponed pending efforts to implement and effectuate the Plan of Composition or pending the further Order of this Court; and that all owners or holders of any of said Outstanding Bonds or Coupons be temporarily restrained, pending hearing, from instituting and prosecuting and continuing any legal action for enforcement of the Outstanding Bonds and Coupons.

(f) That upon final approval of the Plan of Composition and upon deposit by Petitioner with the Fiscal Agent of required Refunding Bonds, interest then due thereon and Certificates of Indebtedness to provide an exchange in accordance with the Plan of Composition for all Outstanding Bonds and Coupons whether deposited or not, then and thereupon the Outstanding Bonds shall be fully extinguished, except for purpose of refunding exchange as hereinafter provided, and shall no longer constitute an indebtedness due by Petitioner or any impediment to full validity of the Refunding and Improvement Bonds now being issued.

(g) That upon and subject to approval of the Plan of Composition presented herein, bondholders who have not yet deposited their Outstanding Bonds and Coupons for refunding exchange shall be allowed until the March 1, 1974 regular interest payment date, after the issuance of final decree of approval of the Plan of Composition pursuant to subparagraph (f) of Section 403, Title 11, U.S. Code, within which to deposit such Outstanding Bonds and Coupons with the Fiscal Agent for refunding exchange pursuant to such approved Plan of Composition, with further provision that after such time all liability of Petitioner under any undeposited Outstanding Bonds and/or Coupons and under any undelivered Refunding Bonds and/or Certificates of Indebtedness deposited with the Fiscal Agent for purposes of refunding exchange shall stand fully extinguished because of the non-deposit of such Outstanding Bonds and Coupons within the time allowed by this Court; and that the Notice of Hearing to be given to all creditors contain proper reference to this provision.

(h) That approval be granted for payment of funds for refunding, extension, improvement and other costs within the amounts allowed as specified in paragraph 6 of this Petition.

(i) That all costs of this action, including a reasonable fee for Petitioner's counsel, be taxed against Petitioner herein.

(j) That this Court grant such other and further relief as it may deem proper herein.

### Appendix II

### ORDER APPROVING FILING OF PETITION FOR COMPOSITION

On consideration of the Petition for Approval of Plan of Composition dated April 1, 1966, and duly filed with this Court, and upon careful examination of the certified Exhibits filed therewith and consideration of all matters and things presented at the time of such filing, it appears prima facie that the Petitioner is entitled to the relief sought in the Petition.

Accordingly, and on motion of C. W. F. Spencer, Jr., Petitioner's Attorney, it is ordered and decreed as follows:

(1) That the Petition for Approval of Plan of Composition is hereby approved as properly filed pursuant to the requirements of law and in good faith.

(2) That it appears prima facie, and subject to final hearing, that approximately 70% in amount of the affected bondholding creditors, and more than the two-thirds in amount thereof required by law to support Court approval, have

approved the Plan of Composition in writing, and that the plan is fair and equitable and should be approved and that any failure to approve same could create serious inequity between creditors of the same class.

(3) That the Court hereby fixes a hearing on the Petition herein to be held in the Federal Courtroom at Rock Hill, S. C., on the 18th day of June, 1966, at 10:30 o'clock A. M., or as soon thereafter as is convenient to the Court; that creditors affected by the plan who desire to controvert any material allegations of the Petition, and set up any objection thereto may file Answer with the Court at any time not less than ten (10) days prior to the date fixed for hearing of said Petition.

(4) That Notice of Hearing shall be given by and in the name of Petitioner substantially in accordance with the attached form of notice which shall be published once a week for three consecutive weeks in The State, Columbia, S. C., and The Daily Bond Buyer, New York, N. Y., and which shall be forwarded by regular mail with postage prepaid to all known bondholders at their present or last known addresses, as listed upon Exhibits D and E to the Petition for Approval of Plan of Composition, whether or not their bonds have been deposited with the Fiscal Agent.

(5) That all obligations due by Petitioner under its Outstanding Bonds or otherwise, excepting current operational costs, be temporarily postponed pending efforts to implement and effectuate the Plan of Composition or pending the further Order of this Court; and that all owners or holders of any of said Outstanding Bonds or Coupons or other obligations, excepting current operational costs, be temporarily restrained, pending hearing, from instituting and prosecuting and continuing any legal action for enforcement of said Outstanding Bonds and Coupons or such other obligations.

(6) That subject to final approval of the Plan of Composition and upon implementation thereof through deposit by Petitioner with Citizens and Southern National Bank of South Carolina, at Columbia, S. C., as Fiscal Agent and as Exchange Agent, of required Refunding Bonds, interest due thereon and Certificates of Indebtedness to provide an exchange in accordance with the Plan of Composition for all Outstanding Bonds and Coupons, whether deposited or not, then and thereupon the Outstanding Bonds shall be fully extinguished and shall no longer constitute an indebtedness due by Petitioner or any impediment to full validity of the Refunding and Improvement Bonds now being issued; provided that said Outstanding Bonds and Coupons shall nevertheless be acceptable for purposes of refunding exchange only, during the additional time allowed therefor under the provisions of paragraph (7) of this Order.

(7) That upon and subject to final approval of the Plan of Composition, bondholders who have not yet deposited their Outstanding Bonds and Coupons for refunding exchange shall be allowed until the March 1, 1974, regular interest payment date, after prior issuance of final decree of approval of the Plan of Composition pursuant to subparagraph (f) of Section 403, Title 11, U.S.Code, to make deposit of such Outstanding Bonds and Coupons with The Citizens and Southern National Bank of South Carolina, at Columbia, S. C., as Fiscal Agent and as Exchange Agent for refunding exchange pursuant to the approved Plan of Composition, provided that after such date all liability of Petitioner under any undeposited Outstanding Bonds and/or Coupons and under any undelivered Refunding Bonds and Coupons and Certificates of Indebtedness deposited with the Fiscal Agent for purposes of refunding exchange shall stand fully extinguished because of the non-deposit of such Outstanding Bonds and Coupons within the time allowed by this Court; that any such extinguished Refunding Bonds and/or Certificates of Indebtedness held by the Fiscal Agent shall be voided and delivered to Petitioner; and that due notice of this provision be contained in the Notice of Hearing.

(8) That remaining steps to be taken pursuant to the prayer of the Petition herein are (a) final hearing on the Petition and action after hearing on final approval thereof; (b) approval of all costs of the Plan of Composition; (c) approval of all costs of this action, including a reasonable fee for Petitioner's Attorney; and (d) the granting of such other and further relief as the Court may deem proper.

(9) That the foregoing Order represents an interlocutory decree issued pursuant to the provisions of Title 11, Section 401 et seq., United States Code, and same is subject in all regards to issuance of final decree after hearing pursuant to Notice as required hereby.

All of which is duly ordered.